# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

THOMAS LEE RUSH,                        )
                                       )
                    Plaintiff,         )
                                       )
        v.                             )            Civil Action No. 14-0488 (BAH)
                                       )
CHARLES E. SAMUELS, JR.,               )
Director, Federal Bureau of Prisons,   )
                                       )
                    Defendant.         )

## MEMORANDUM OPINION

This matter is before the Court on defendant Charles E. Samuels, Jr.'s Motion to Dismiss

or in the Alternative for Summary Judgment, ECF No. 10, pursuant to Federal Rules of Civil

Procedure 12(b)(1) and (b)(6) and 56.  The plaintiff, Thomas Lee Rush, filed this lawsuit

alleging that the defendant infringed the plaintiff's First Amendment rights to petition the

government for redress of grievance, in violation of 42 U.S.C. § 1983.  Compl. ¶ V, ECF No. 1.

For the reasons discussed below, the defendant's motion is granted and this action is dismissed.[1]

## I.  BACKGROUND

As summarized below, the plaintiff's complaint stems from his lengthy administrative

dispute with the Federal Bureau of Prisons ("BOP") over his designation as a "Central Inmate

Monitoring" Case.

---

[1]   Also pending before the Court is the plaintiff's Motion for Leave to File a Supplemental Complaint, ECF No. 15-
1, which motion is denied.  The plaintiff purports to add the claim that the defendant violated his First Amendment
rights by "having an obsolete going around Administrative Remedy Program."  Supplemental Complaint, ECF No.
15-1 at 2.  This new claim is neither clear nor substantially different from the claims raised in his original complaint.

**A.  Central Inmate Monitoring ("CIM") Assignment**

The plaintiff currently is in the custody of BOP serving a 447-month aggregate term of

imprisonment for his convictions in 1998 and 1990, in the United States District Court for the

Northern District of Florida, Case Nos. GCR 88-01004-01 and GCR 90-01008-01, respectively,

for the following offenses:

> [in 1998], the plaintiff received a 360-month sentence for:
> Conspiracy to Possess Marijuana, Methamphetamine and Cocaine .
> . . ; Possession with Intent to Distribute Marijuana . . . ; Possession
> with Intent to Distribute Methamphetamine . . . ; and Conceal
> Material Facts . . . .  [In 1990], the plaintiff received an 87-month
> sentence, to be served consecutively to the 360-month sentence,
> for: Possession of Unregistered Firearm . . . ; Transfer of Illegal
> Firearm . . . ; Possession of a Firearm With No Identification
> Number and Silencer . . . ; and Possession of a Firearm by a
> Convicted Felon, Conspiracy to Possess Unregistered Firearm and
> Illegally Transfer Firearms . . . .

Memorandum of Points and Authorities in Support of Motion to Dismiss or in the Alternative for

Summary Judgment, ECF No. 10 ("Def.'s Mem."), Declaration of Steven Norris, ECF No. 10-4

("Norris Decl.") ¶ 14.

"The BOP monitors and controls the transfer, temporary release, and community

activities of certain inmates who present special needs for management, known as central inmate

monitoring (CIM) cases."  Norris Decl. ¶ 4.  For example, a CIM is assigned to an inmate "who

ha[s] made threats to government officials or who ha[s] been identified, in writing, by the United

States Secret Service as requiring special surveillance."  *Id*., Attachment ("Attach.") 1 (Program

Statement 5180.05, *Central Inmate Monitoring System*, 12/31/2007) at 3.  The BOP deems the

plaintiff a CIM case.  *See* Supporting Memorandum of Points and Authorities for Complaint

Under the Civil Rights Act 42 U.S.C. §1983, ECF No. 1-2 ("Pl.'s Mem.") at 1; *see id*., Exhibit

("Exh.") 2 (Notification of Central Inmate Monitoring (CIM) Classification or Declassification

dated April 27, 1992).

The origin of the plaintiff's CIM assignment is described as follows:

> 17)     Records indicate that the BOP's Southeast Regional Designator received correspondence dated March 29, 1989, from an Assistant United States Attorney (AUSA) informing him the *plaintiff had plotted several murders from his cell at FCI Memphis and attempted to carry out those plots*. The correspondence indicated that during a recorded telephone conversation with . . . a purported hit-man, the plaintiff clearly stated that the murder of the Honorable Maurice Paul, who presided over Case No. GCR 88-01004-01, was his idea. As payment for the murder, the plaintiff identified the names of drug dealers who owed him money and informed the hit-man he could keep half of all he collected. The plaintiff also expressed his wishes that a DEA agent, an agent of the Florida Department of Law Enforcement, and several additional co-conspirators be murdered.
>
> 18)     Records indicate that on July 24, 1989, the United States Marshals Service (USMS) notified the BOP that the plaintiff was *under investigation by the USMS for making a specific or implied threat to the federal judiciary* . . . .
>
> 19)     . . . [O]n February 15, 1990, the plaintiff was indicted in Case No. 90-01008-01 . . . .
>
> 20)     Plaintiff was sentenced in Case No. GCR 90-01008-01 on October 15, 1990 . . . . Via correspondence dated October 17, 1990, the AUSA again provided information regarding the plot to kill Judge Paul and stated that despite strong physical evidence, the *plaintiff was acquitted of all three attempted murder counts*.
>
> 21)     Records indicate on October 31, 1990, the BOP's Community Corrections Office located in Atlanta, Georgia updated the plaintiff's security and custody classification following his conviction and sentencing in Case No. GCR 90-01008-01 . . . . At that time, it was noted an interim CIM assignment of Government Threat was assigned *based on information contained in the pre-sentence investigation report*.

Norris Decl. ¶¶ 17-21 (emphasis added).[2]

---

[2] The BOP made, and the plaintiff does not challenge, a CIM assignment of "Separation" upon the plaintiff's initial designation in 1988, in order that he not be confined in the same institution with other specified inmates. *See* Norris Decl. ¶¶ 6, 15; Pl.'s Mem. at 2.

A '"Threat to Government Officials' assignment . . . does not require an inmate to have been convicted of actually attempting to harm the government official, merely that a threat was made." *Id*. ¶ 5. Accordingly, even though the plaintiff "was acquitted of [the] attempted murder counts," *id*. ¶ 20, he is still assigned a "Threat to Government Officials" CIM, *see id*. ¶¶ 5, 17-24. The plaintiff also is "assigned . . . a Public Safety Factor (PSF) of 'Threat to Government Officials' as a result of his CIM assignment of Threat to Government Officials," *id*. ¶ 24, which "requires [that he] be housed in at least a Low security level institution[,]" *id*. ¶ 13.

### B. The BOP's Administrative Remedy Program

The BOP's Administrative Remedy Program establishes a four-step process for resolution of an inmate's grievances. First, an inmate "present[s] an issue of concern informally to staff, and staff . . . attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." 28 C.F.R. § 542.13(a). "At FCI Forrest City – Low [where the plaintiff was incarcerated at all times relevant to the complaint], inmates first attempt informal resolution by presenting grievances verbally to the staff member having responsibility for the area or program involved." Norris Decl. ¶ 25; *see id*., Attach. 9 (Institution Supplement, Number FOX 1330.17-07 (Sept. 12, 2012)) at 3-4.

If the matter is not resolved informally, "the inmate is issued a Documentation of Informal Resolution Attempt form," and if the inmate's "Unit Manager has not completed a review of the informal resolution documentation [within two business days], the inmate is issued a Request for Administrative Remedy form ('BP-9') upon request," Norris Decl. ¶ 26; *see* 28 C.F.R. § 542.14(a), for submission to the Warden of the institution where he is incarcerated, *see* 28 C.F.R. § 542.14(d). If the inmate is not satisfied with the Warden's response, he may file "a Regional Administrative Remedy Appeal ('BP-10') with the appropriate BOP Regional Office."

4

Norris Decl. ¶ 27; *see* 28 C.F.R. § 542.15(a).  "If the Regional Office denies the [inmate's request], the inmate can appeal the decision by filing a Central Office Administrative Remedy Appeal ('BP-11') to the Office of the General Counsel" at BOP's Central Office.  Norris Decl. ¶ 27; *see* 28 C.F.R. § 542.15(b).   "Appeal to the General Counsel is the final administrative appeal."  Norris Decl. ¶ 27.

The requirement that an inmate submit his initial request at the institutional level has exceptions.  For example, "[i]f the inmate reasonably believes the issue is sensitive and [his] safety or well-being would be placed in danger" should staff at the institution become aware of his issue, "the inmate may submit [his request] directly to the appropriate Regional Director."  28 C.F.R. § 542.14(d)(1); *see* Norris Decl., Attach. 9 at 3.  Relevant to this case is an exception allowing a "formal administrative remedy request[] regarding [an] initial decision[] that did not originate with the Warden, or his/her staff, [to] be initially filed with the [BOP] office which made the original decision, and [to] appeal [that determination] directly to the General Counsel." 28 C.F.R. § 542.14(d)(5).

### C.  The Plaintiff's Administrative Remedy Requests

The plaintiff repeatedly has challenged the CIM assignment over the past four years.  In 2011, he submitted an Inmate Request to Staff asking that, in light of his acquittal on the attempted murder counts, the "CIM [Threats to] Government Officials . . . be removed from [his] file."  Pl.'s Mem. at 2; *see id.*, Exh. 4 (Inmate Request to Staff dated December 14, 2011).   His Unit Team denied the request. On review of the CIM assignment, staff determined that "the assignment [was] correct and [would] remain" in effect.  *Id.*, Exh. 4 (Disposition of Inmate Request to Staff dated January 19, 2012).

On February 3, 2012, the plaintiff again requested removal of the CIM assignment. *Id.* at 3; *see id.*, Exh. 5 (Documentation of Informal Resolution Attempt dated February 3, 2012).  This request was also denied.   *Id.*, Exh. 6 (Response to Informal Resolution Attempt).  The plaintiff was no more successful with a third informal request to staff in July 2012, when staff again advised the plaintiff that the CIM assignment would remain in effect.  Norris Decl. ¶ 30; *see id.*, Attach. 13 (Documentation of Informal Resolution Attempt dated July 23, 2012 and Unit Manager's Response).

"Following the plaintiff's program review in May 2012," the Warden submitted a request to BOP's South Central Regional Office inquiring about "the declassification of the Threat to Government Official on the plaintiff."  Norris Decl. ¶ 29; *see id.*, Attach. 11 (Memorandum to G. Maldonado, Regional Director, South Central Region, BOP, from T.C. Outlaw, Warden, Federal Correctional Complex – Low, Forrest City, AR, dated May 9, 2012).  The CIM Coordinator for the South Central Regional Office, Def.'s Mem., Declaration of Shannon Robbins, ECF No. 10-6 ("Robbins Decl.") ¶ 1, "reviewed the warden's May 9, 2012 request for review of [the plaintiff's] CIM assignment," Robbins Decl. ¶ 3.  The CIM file revealed:

> [W]hile at FCI-Memphis, in a recorded telephone conversation with an undercover agent posing as "hit-man," on March 10, 1989, [the plaintiff] indicated that he wanted a witness killed, but that he did not want Judge Paul killed at that time.  In another call with the agent on March 15, 1989, [the plaintiff] asked the agent to kill Judge Paul and provided the agent with the names of persons who owed him $43,500 from drug sales.  The agent was told he could keep half of anything he collected in payment for the judge's murder.  The stated motive for the judge's murder was "so he'll never give anyone else this kind of time."

*Id.* ¶ 6.  The CIM Coordinator "considered the initial investigation and approval of [the plaintiff's] CIM assignment . . . and determined that there was no new information to warrant a change in the assignment."  *Id.* ¶ 4.  "Specifically, the same information concerning [the

plaintiff] being found not guilty of the attempted murder, and the judge's statement that the preponderance of the evidence did not confirm [the plaintiff's] involvement in the attempted murder of Judge Paul were in the portion of [the plaintiff's] presentence report which was a part of [his] CIM file." *Id*. ¶ 5.  She concluded that "[the plaintiff] clearly had made threats against a federal judge and two law-enforcement officers," such that "the CIM assignment should remain in effect." *Id*. ¶ 7.

The plaintiff next submitted a formal written request to the Warden for removal of the CIM assignment.  Pl.'s Mem., Exh. 10 (Request for Administrative Remedy dated August 17, 2012).  Based on the CIM Coordinator's denial of the Warden's May 9, 2012 declassification request, the Warden denied the plaintiff's administrative remedy request.  *Id*., Exh. 11 (Response to Request for Administrative Remedy, No. 701920-F1, dated September 9, 2012).  The plaintiff appealed this denial to the Regional Director, *id*., Exh. 13 (Regional Administrative Remedy Appeal, No. 701920-R1 dated September 17, 2012), and this appeal was also denied.  *Id*., Exh. 15 (Response, No. 701920-R1 dated November 8, 2012).  The plaintiff then submitted an appeal to BOP's Central Office, *id*., Exh. 16 (Central Office Administrative Remedy Appeal dated December 4, 2012).[3]  Finally, the plaintiff sought relief directly from the South Central Regional Office and the BOP's Designation and Sentence Computation Center ("DSCC").  He "challeng[ed] information in his file maintained by the DSCC, including . . . a 'CIM' for threats to Government officials" that is "not supported in writing by the United States Secret Service [as] mandated [under] 27 C.F.R. §542.72(b)," and instead is "supported by erroneous information," notwithstanding his acquittal on the counts of attempted murder.  Pl.'s Mem., Exh. 23 (Regional Administrative Remedy Appeal dated July 16, 2013) at 2-3.  The DSCC rejected

---

[3]   The outcome of this appeal is unknown.

the appeal because the plaintiff had submitted it to the wrong level – according to its response, the plaintiff should have filed at the institutional level.  *Id*., Exh. 25 Rejection Notice, Remedy ID # 743378-R1, dated July 23, 2013).

The administrative remedy request to the BOP's South Central Regional Office was practically identical to the request submitted to the DSCC, *see id*., Exh. 24 (Regional Administrative Remedy Appeal dated July 16, 2013), and it, too, was rejected because the plaintiff first had not submitted the request to the institution's Warden.  *See id*., Exh. 29 (Rejection Notice, Remedy ID #746324-R1, dated August 16, 2013, from the South Central Regional Office).  The plaintiff was no more successful in his appeals of these responses to BOP's Central Office.  *See id*., Exhs. 31, 33 (respectively, Rejection Notice, Remedy ID # 743378-A1, dated September 3, 2013 and Rejection Notice, Remedy ID #746324-A1, dated September 27, 2013).

In 2013, the plaintiff adopted a different strategy by sending a letter to the United States Probation Office for the Northern District of Florida requesting "correction of some erroneous presentence report reference to [his] alleged involvement in the attempted murder of Honorable Judge Paul," in light of his acquittal by a jury.  *See id*., Exh. 22 (Letter to U.S. Probation Officer from plaintiff dated July 16, 2013).  The Probation Office took "the position . . . that the information contained in the presentence report prepared in Docket No. GCR 90-01008-01, and as amended by order of the Court, was properly reported and that no corrections are warranted." *Id*., Exh. 26 (Letter to plaintiff from Saralyn D. Lee, Supervising U.S. Probation Officer, dated July 23, 2013) at 1-2.  The Probation Office noted, however, that the court's judgment "set[] out that the preponderance of evidence did not confirm [the plaintiff's] involvement in the

8

Attempted Murder of U.S. District Judge Maurice M. Paul, nor the Attempted Murder of two key witnesses." *Id.*, Exh. 26 at 1.

Armed with the Probation Office's response, the plaintiff asked BOP either to correct any allegedly erroneous information in its records as to his guilt on the attempted murder charges or to include a statement in its records reflecting the plaintiff's acquittal on the attempted murder charges. *Id.*, Exh. 28 (Inmate Request to Staff dated August 12, 2013). Staff rejected the request on August 20, 2013. *Id.*, Exh. 28.

The plaintiff next attacked the process by which he was expected to request an administrative remedy regarding the CIM assignment. In August 2014, he submitted an informal request to staff to resolve the following complaint:

> In the last two (2) updates of Program Statement 1330.17 and 18[,]
> Central office excluded 28 C.F.R. §542.14 sub-section (d)(5).
> Respectfully requesting to Central Office to include 28 C.F.R.
> §542.14 sub-section (d)(5) in Program Statement 1330.18.

Motion for Leave to File Supplemental Complaint, Ex. A (Supplemental Complaint), ECF No. 15-1, Attach. A (Documentation of Informal Resolution Attempt dated August 28, 2014). Staff instructed the plaintiff to "[d]irect [his] correspondence to the central office" because "the institution does not write the program statements." *Id.*, Attach. A. The plaintiff next submitted a formal written request (BP-9) to the Warden. *See* Addendum to Supplemental Complaint, ECF No. 18, Attach. A (Receipt – Administrative Remedy, Remedy ID # 793766-F2, dated October 15, 2014). The Warden denied the request, noting that "Program Statements are not written at the local level." Second Addendum to Supplemental Complaint, ECF No. 19, Exh. A2 (Response to Request for Administrative Remedy (793766-F2) dated October 21, 2014). The plaintiff unsuccessfully challenged the Warden's response by filing an appeal to the Regional Director. Third Addendum to Supplemental Complaint, ECF No. 21, Attach. A3 (Response,

9

Case No. 793766-R1, dated November 25, 2014).  The outcome of Administrative Remedy No.

793766-R1 is unknown -- neither party included in the record of this case a statement or

document to indicate that plaintiff completed the process by filing a final appeal to the Central

Office.

### D.  The Plaintiff's Complaint

In his complaint, the plaintiff alleges that the defendant, Director of the BOP, violated his

"First Amendment rights of petition the Government for a redress of grievance" in the following

ways:

1) for updating Program Statement 1330.17, now referred [to] as 1330.18, and omitting 28 C.F.R. §542.14 subsection (d)(5) amended by 75 FR 34626;
2) for concurring with the Designation and Sentence Computation Center (DSCC) and the Southern Regional Director rationale for rejection; and
3) for failing to grant [the plaintiff's] request for an updated Program Statement 1330.17, now referred as 1330.18.

Notice of Complaint Under Civil Rights Act 42 U.S.C. § 1983, ECF No. 1 ("Compl.") at 7 (page

numbers designated by ECF).  The Program Statement to which the plaintiff refers is Program

Statement 1330.18, *Administrative Remedy Program* (Jan. 6, 2014) ("P.S. 1330.18"), which

updates Program Statement 1330.17, *Administrative Remedy Program* (Aug. 20, 2012).

The Court understands the complaint as alleging that the defendant (1) allowed the

implementation of a Program Statement, specifically P.S. 1330.18, which sets out procedures for

the initial filing of an administrative remedy request that the plaintiff contends are inconsistent

with the regulation, 28 C.F.R. § 542.14(d), on which the program statement is based; (2) refused

to amend P.S. 1330 so that it is consistent with and incorporates the language set forth in 28

C.F.R. § 542.14(d)(5); and (3) wrongfully refused to grant the plaintiff's request to remove the

Threats Against Government Officials CIM assignment.  As has the defendant, *see* Def.'s Mem.

10

at 2, the Court construes the plaintiff's complaint liberally as one making claims under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), the rulemaking provision of the Administrative Procedure Act ("APA"), *see* 5 U.S.C. § 553, and the amendment and accuracy provisions of the Privacy Act, *see* 5 U.S.C. § 552a(d), (e).

## II. LEGAL STANDARDS

### A.  Dismissal Under Federal Rule Of Civil Procedure 12(b)(1)

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'"  *Gunn v. Minton*, 133 S. Ct. 1059 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  Indeed, federal courts are "forbidden . . . from acting beyond our authority," *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008), and, therefore, have "an affirmative obligation 'to consider whether the constitutional and statutory authority exist for us to hear each dispute.'" *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (quoting *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 196 (D.C. Cir. 1992)).  Absent subject matter jurisdiction over a case, the court must dismiss it.  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506-07 (2006); FED. R. CIV. P. 12(h)(3).

When considering a motion to dismiss under Rule 12(b)(1), the court must accept as true all uncontroverted material factual allegations contained in the complaint and "'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged' and upon such facts determine jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).  The court need not accept inferences drawn by the plaintiff, however, if those inferences are unsupported by facts alleged in the complaint or amount merely to legal

conclusions.  *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  Moreover, in

evaluating subject matter jurisdiction, the court, when necessary, may "'undertake an

independent investigation to assure itself of its own subject matter jurisdiction,'" *Settles v.*

*United States Parole Comm'n*, 429 F.3d 1098, 1107-1108 (D.C. Cir. 2005) (quoting *Haase v.*

*Sessions*, 835 F.2d 902, 908 (D.C. Cir. 1987)), and consider facts developed in the record beyond

the complaint, *id.*

### B.  Dismissal Under Federal Rule Of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), the "complaint must contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

*Wood v. Moss*, 134 S. Ct. 2056, 2067 (2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009)).  A claim is facially plausible when the plaintiff pleads factual content that is more than

"'merely consistent with' a defendant's liability," but allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged," *id.* at 678  (citing *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 556 (2007)); *see also Rudder v. Williams*, 666 F.3d 790, 794

(D.C. Cir. 2012).  Although "detailed factual allegations" are not required to withstand a Rule

12(b)(6) motion, a complaint must offer "more than labels and conclusions" or "formulaic

recitation of the elements of a cause of action" to provide "grounds" of "entitle[ment] to relief,"

*Twombly*, 550 U.S. at 555 (alteration in original), and "nudge[ ] [the] claims across the line from

conceivable to plausible," *id*. at 570.  Thus, "a complaint [does not] suffice if it tenders 'naked

assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*,

550 U.S. at 557).  In considering a motion to dismiss for failure to plead a claim on which relief

can be granted, the court must consider the complaint in its entirety, accepting all factual

allegations in the complaint as true, even if doubtful in fact.  *Twombly* at 555; *Sissel v. U.S.*

*Dep't of Health and Human Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014) (in considering Rule 12(b)(6)

motion, the "court assumes the truth of all well-pleaded factual allegations in the complaint and

construes reasonable inferences from those allegations in the plaintiff's favor, but is not required

to accept the plaintiff's legal conclusions as correct") (internal quotations and citations omitted).

## III. DISCUSSION

### A.  The Plaintiff's Civil Rights Claims Against The Defendant

The plaintiff purports to bring a civil rights action under 42 U.S.C. § 1983 against a

single defendant, the Director of the BOP.  *See* Compl. at 1, 6; Pl.'s Mem. at 1.  The court

presumes that the plaintiff sues the defendant in both his official and individual capacities.

In pertinent part, § 1983 provides:

> [e]very person who, *under color of any statute, ordinance,*
> *regulation, custom, or usage, of any State or Territory or the*
> *District of Columbia*, subjects . . . any citizen of the United States
> or other person within the jurisdiction thereof to the deprivation of
> any rights, privileges, or immunities secured by the Constitution
> and laws, shall be liable to the party injured in an action at law, suit
> in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983 (emphasis added).  In order to state a claim under § 1983 for a violation of a

constitutional right, a complaint must allege facts sufficient to support a reasonable inference that

"(1) a person (2) acting under color of state law (3) subjected the plaintiff or caused the plaintiff

to be subjected (4) to the deprivation of a right secured by the Constitution or laws of the United

States."  *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 829 (1985).

The BOP is a federal government entity and its Director necessarily acts under color of

*federal*, not state, law.   The plaintiff's claims under § 1983 against the defendant in both his

official and individual capacities, therefore, "must be dismissed for failing to state a claim . . .

because [§] 1983 only applies to state officials acting under state law."  *Gabriel v. Corr. Corp. of*

*Am.*, 211 F. Supp. 2d 132, 135-36 (D.D.C. 2002) (internal quotation marks and citations omitted).

This does not end the analysis, however.  In construing the complaint liberally, the court further considers the claim under *Bivens*, which serves as the federal analog to suits brought against state officials under  42 U.S.C. § 1983.  *Ali v. Rumsfeld*, 649 F.3d 762, 768 n.3 (D.C. Cir. 2011) ("A *Bivens* suit is the federal counterpart of a claim brought pursuant to 42 U.S.C. § 1983 against a state or local officer/employee for the violation of the claimant's constitutional rights."); *Marshall v. Fed. Bureau of Prisons*, 518 F. Supp. 2d 190, 193 (D.D.C. 2007) (quoting *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006) (internal citation omitted)).  A suit against a government official in his official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent," such that "an official capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (citations omitted).  Thus, the plaintiff's *constitutional* claims against the defendant in his official capacity are treated as if they were brought against the BOP directly.  Yet, a *Bivens* action cannot be brought against the federal government itself or against a federal government agency.  *See FDIC v. Meyer*, 510 U.S. 471, 486 (1994) (declining to extend *Bivens* to agencies of the federal government).  Thus, any *Bivens* claims against the defendant in his official capacity also must be dismissed.

Insofar as the plaintiff brings this action under *Bivens* against the defendant in his individual capacity, the claim fails.  While *Bivens* recognizes a cause of action for damages against a federal officer in his personal capacity, *see Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001), to state such a *Bivens* claim, a plaintiff "must at least allege that the defendant federal official was personally involved in the illegal conduct," *Simpkins v. District of Columbia Gov't*,

108 F.3d 366, 369 (D.C. Cir. 1997).  The plaintiff's complaint fails to allege that the defendant

himself is directly responsible for the CIM assignment or for the omission from P.S. 1330.18 of

the language set forth in 28 C.F.R. § 542.14(d)(5).  Accordingly, the plaintiff's constitutional

claims against the defendant pursuant to either 42 U.S.C. § 1983 or *Bivens* are dismissed.

### B.  Exhaustion of Administrative Remedies

In addition to failing to state cognizable constitutional claims under § 1983 or *Bivens,* the

defendant contends that the plaintiff's claims related to his 2013 administrative complaints

numbered 743378 and 74632 to South Central Regional Office and DSCC relating to his CIM

assignment, as well as the plaintiff's challenges to P.S. 1330.18, must be dismissed for failure to

exhaust administrative remedies.  Def.'s Mem. at 16.

The Prison Litigation Reform Act provides, in relevant part:

> [n]o action shall be brought with respect to prison conditions under
> section 1983 of this title, or any other Federal law, by a prisoner
> confined to any jail, prison, or other correctional facility until such
> administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  The exhaustion requirement is mandatory and "applies to all prisoners

seeking redress for prison circumstances or occurrences."  *Porter v. Nussle*, 534 U.S. 516, 520

(2002); *see Jones v. Bock*, 549 U.S. 199, 211 (2007).  It requires proper exhaustion, meaning that

a prisoner must comply with procedural rules, including filing deadlines, as a precondition to

filing a civil suit in federal court, regardless of the relief offered through the administrative

process.  *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Booth v. Churner*, 532 U.S. 731, 741

(2001).  Thus, a prisoner may file a civil action concerning conditions of confinement under

federal law only after he has exhausted the prison's administrative remedies.  *See Jackson v.

District of Columbia*, 254 F.3d 262, 269 (D.C. Cir. 2001).  Exhaustion under the PLRA is not a

jurisdictional requirement, but instead is an affirmative defense.  *See Jones*, 549 U.S. at 216;

*Woodford*, 548 U.S. at 101.  Thus, a defendant must plead and prove the plaintiff's failure to

exhaust administrative remedies.  *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005)

(quoting *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004)); *see Albino v. Baca*, 646 F.3d 1162,

1171 (9th Cir.), *cert. denied*, 135 S. Ct. 403 (2014).

### 1.  *Administrative Remedy Requests Regarding CIM Assignment*

The defendant submits that the plaintiff did not exhaust his administrative remedies for

complaint Nos. 743378 and 746324 challenging his CIM assignment because the plaintiff did not

submit these complaints to the Warden before proceeding directly to the South Central Regional

Office and the DSCC.  *See* Def.'s Mem. at 15-18.  The plaintiff exploits a discrepancy between

P.S. 1330.18 and 28 C.F.R.  542.14(d) to justify submission of his requests directly to the BOP

offices he believed were responsible for the CIM assignment.  *See* Pl.'s Opp'n at 7.  P.S. 1330.18

requires that an inmate submit his first formal written administrative remedy request to the

Warden.  Under 28 C.F.R. § 542.14(d)(5), however, if an inmate's administrative remedy request

pertains to an "initial decision[] that did not originate with the Warden, or his/her staff," *id*., the

inmate may file his request  "with the [BOP] office which made the original decision, [and]

appeal [that decision] directly to the General Counsel," *id*., thereby bypassing the Warden.

The defendant neither argues nor submits authority to support the proposition that a

program statement trumps a duly promulgated regulation.  The plaintiff submits that "National

Program Statements do not originate from Wardens, Regional Offices or the Designation and

Sentence Computation Center," and that they "originat[e] from [the] Central Office . . . and are

approved by the Director of the [BOP] (Samuels)."  Response to Defendant's Motion to Dismiss

or in the Alternative for Summary Judgment, ECF No. 13 ("Pl.'s Opp'n") at 7.  Thus, 28 C.F.R.

§ 542.14(d)(5) offers some support for the plaintiff's decision to proceed directly to the South

Central Regional Office and to the DSCC. *Cf. Sines v. Caley*, 563 F. App'x 631, 632 (10th Cir. 2014) (finding that prisoner requesting award of pre-sentence confinement credit "properly initiated his claims through the BOP administrative process by submitting them to the BOP's Designation and Sentence Computation Center"). Under these circumstances, the court concludes that the plaintiff's claims with respect to the CIM assignment will not be dismissed for failure to exhaust administrative remedies.[4]

### *2. Administrative Remedy Requests Regarding P.S. 1330.18*

The defendant argues that the plaintiff "failed to exhaust his administrative remedies with regard to the claims involving updating Program Statement 1330, now referred to as 1330.18." Def.'s Mem. at 20. According to the defendant, "[t]he only place where [the plaintiff] asked that Program Statement 1330.17 be updated [is] his appeal to the South Central Regional Office [in] [R]emedy [N]o. 743378-R1." *Id*. at 21. Further, the defendant argues, this administrative remedy request neither included a "request that the Policy Statement be updated in compliance with the administrative regulation, 28 CFR  542," nor was submitted to the correct office. *Id.*

The plaintiff counters that, in August 2014, he submitted an informal request to staff specifically addressing the language set forth in 28 C.F.R. § 542.14(d)(5) that does not appear in the corresponding Program Statement. *See* Motion for Leave to File Supplemental Complaint, Ex. A (Supplemental Complaint), Attach. A (Documentation of Informal Resolution Attempt dated August 28, 2014). Staff denied the request, as did the Warden and the Regional Director. *See id.*, Attach. A; Second Addendum to Supplemental Complaint, Ex. A2; Third Addendum to Supplemental Complaint, Attach. A3.

---

[4]   The court the rejects the plaintiff's assertion, *see, e.g.,* Pl.'s Mem. at 9, that his First Amendment right to seek redress of grievances has been denied. Rather, the court notes, the plaintiff has had the benefit of a review of his CIM designation by the South Central Regional Office's CIM Coordinator. *See* Norris Decl., Attach. 11; Robbins Decl, ¶¶ 1-7.

The outcome of Administrative Remedy No. 793766-R1 is unknown -- neither party has submitted a statement or document to indicate that the plaintiff completed the process by filing a final appeal to the Central Office.  Even if he had completed all steps of the process, it is apparent that the plaintiff failed to exhaust his administrative remedies *prior to* filing this action. The plaintiff first sought an informal resolution of this matter on August 28, 2014, months after he filed this lawsuit on March 18, 2014.[5]  For this reason, the defendant's motion to dismiss for failure to exhaust administrative remedies this part of the plaintiff's claims is granted.

### C.  The Plaintiff's Privacy Act Claims

Insofar as the plaintiff seeks amendment of BOP records pertaining to him and correction of allegedly erroneous records, the Court proceeds as if the plaintiff expressly had raised a claim under the Privacy Act.

Generally, "[t]he Privacy Act regulates the collection, maintenance, use, and dissemination of information about individuals by federal agencies."  *Wilson v. Libby*, 535 F.3d 697, 707 (D.C. Cir. 2008) (internal quotation marks and citations omitted).  An individual may request access to and amendment of an agency's records or information in a system of records pertaining to him.  *See* 5 U.S.C. § 552a(d).  That individual may file a civil action against an agency which "makes a determination . . . not to amend [the] record in accordance with his request."  *Id*. § 552a(g)(1)(A).  The Privacy Act also requires that an agency "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as to assure fairness to the individual in the determination."  *Id*. § 552a(e)(5).  An individual may file a civil action if an agency:

> fails to maintain any record concerning any individual with such
> accuracy, relevance, timeliness, and completeness as is necessary

---

[5]   The court treats the complaint as if it were filed on March 18, 2014, the date of its receipt by the Clerk.  *See* Compl., (stamped "RECEIVED Mar 18 2014").

> to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual.

*Id*. § 552a(g)(1)(C).  If the court determines that the agency's actions were willful or intentional, it may award actual damages sustained by the individual as a result of the agency's failure to maintain its records with the requisite level of accuracy, costs of the action and attorney fees.  *Id*. § 552a(g)(4).

"The agency obligations created by the Privacy Act are not absolute[.]"  *Meyer v. Fed. Bureau of Prisons*, 940 F. Supp. 9, 134 (D.D.C. 1996).[6]  BOP regulations, for example, exempt the Inmate Central Records System (JUSTICE/BOP-005) from subsections (d) and (g) of the Privacy Act.  *See* 28 C.F.R. § 16.97(a)(1), (4).  An inmate's custody classification form is part of his Inmate Central File.  *See* BOP Program Statement 5800.11, *Inmate Central File, Privacy Folder and Parole Mini-Files* (12/31/1997) at 5, 7.  Consequently, insofar as the plaintiff demands amendment under subsection (d) of any record maintained in the Inmate Central File – including a custody classification form and presentence investigation report – such relief is unavailable under subsection (g).  *See White v. U.S. Prob. Office*, 148 F.3d 1124, 1125 (D.C. Cir. 1998) (per curiam) (holding that appellant is "barred from seeking amendment of his presentence report" because "presentence reports and BOP inmate records systems are exempt from the

---

[6]  An agency head may promulgate regulations to exempt a system of records from any part of the Privacy Act other than subsections (b), (c)(1) and (2), (e)(4)(A) through (F), (e)(6), (7), (9), (10), and (11), and (i), if the system of records is:

> maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including . . . correctional . . . authorities, and which consists of . . . reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

5 U.S.C. § 552a(j)(2).

amendment provisions of the [Privacy] Act"); *Jennings v. Fed. Bureau of Prisons*, 657 F. Supp.

2d 65, 71 (D.D.C. 2009) ("Insofar as plaintiff demands amendment of any record maintained in

the Inmate Central Files system, that is, amendment of the PSI, custody classification form, or

security designation form, this relief . . . is unavailable."); *Register v. Lappin*, No. 07-CV-136,

2007 WL 2020243, at *3 (E.D. Ky. July 6, 2007) ("[A]ll information pertaining to [a prisoner's]

security level and custody classification [is] maintained in the Inmate Central Records System, a

system which has been exempted from subsections (d),(e)(5) and (g) of the Privacy Act by

regulation.").

    In addition, regulations exempt the Inmate Central Records System from subsection

(e)(5) of the Privacy Act.  *See* 28 C.F.R. § 16.97(j); *see also id.* § 16.97(k)(2).  Since the BOP

exempts the Inmate Central Records System from the substantive provision regarding the

agency's recordkeeping obligations, a remedy under the Privacy Act for harm resulting from

inaccuracies in the inmate records is no longer available.  *See Flores ex rel. Estate of Flores v.

Fox*, 394 F. App'x 170, 172 (5th Cir. 2010) (per curiam) (denial of motion to amend complaint

"to name the agency as the proper defendant" to Privacy Act suit for damages that "would have

been futile because in 2002, the BOP promulgated regulations exempting its Inmate Central

Records System from § 552a(e)(5) and from § 552a(g), the civil remedies provision"), *cert.

denied*, 131 S. Ct. 1797 (2011); *Martinez v. Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir.

2006) (per curiam) (upholding dismissal of Privacy Act claims against BOP which had

"exempted its Inmate Central Record System from the accuracy provisions of the Privacy Act, 5

U.S.C. § 552a(e)(5)"); *Earle v. Holder*, 815 F. Supp. 2d 176, 181-82 (D.D.C. 2011) ("It is settled

that inmate records maintained by BOP, including presentence reports, have been exempted from

the Privacy Act's accuracy and amendment requirements (subsections (d) and (e)(5)) and from

its damages provision (subsection (g)).”), *aff'd*, No. 11-5280, 2012 WL 1450574, at *1 (D.C.

Cir. Apr. 20, 2012); *Conklin v. U.S. Bureau of Prisons*, 514 F. Supp. 2d 1, 6 (D.D.C. 2007)

(concluding that the “plaintiff effectively is barred from obtaining any remedy, including

damages, under subsection (g), for the BOP’s alleged failure to maintain records pertaining to

him with the mandated level of accuracy”).   Accordingly, the plaintiff’s assertion of any claim

under the Privacy Act must be dismissed.

### D.  The Plaintiff’s APA Claims

According to the plaintiff, the defendant is responsible for updating Program Statement

1330.17 (now 1330.18) “and omitting Code of Federal Regulation §542.14 sub-section (d)(5),”

and “for failing to grant [the plaintiff’s] request for an updated Program Statement.”  Pl.’s Mem.

at 9.  The defendant understands the plaintiff’s references to “rule making,” *see id*. at 12, 15-17,

as a claim that the BOP failed to comply with the Administrative Procedure Act’s rulemaking

requirements, *see* 5 U.S.C. § 553, in promulgating Program Statement 1330.18, *see* Def.’s Mem.

at 21-22.

The defendant argues, *see* Def.’s Mem. at 21, and the court concurs, that the Program

Statements at issue are not subject to the APA’s rulemaking provisions.  Rather, the program

statements are statements of internal policy that do not require notice and comment.  *See* 5

U.S.C. § 553(b)(A); *Reno v. Koray*, 515 U.S 50, 61 (1995) (characterizing a BOP Program

Statement at issue in that case as “an internal agency guideline [] rather than [a] published

regulation[] subject to the rigors of the [APA], including public notice and comment”); *Pelissero

v. Thompson*, 170 F.3d 442, 447 (4th Cir. 1999).

The plaintiff is no more successful in seeking review of his CIM assignment under the

APA.  He demands review of the BOP’s determination that he requires special management, but

the APA does not apply in these circumstances. *Allen v. Holder*, No. 10-0571, 2010 WL 1924014, at *1 (D.D.C. 2010) (citing 18 U.S.C. § 3625) (dismissing APA claim for review of security designation and custody classification). The BOP, not this Court, is vested with the authority to make CIM assignments, PSF assignments, and an inmate's designation to a particular correctional institution. *See Brown v. Holder*, 770 F. Supp. 2d 363, 365 (D.D.C. 2011) ("The federal statute governing the BOP's authority expressly strips this court of jurisdiction to review certain decisions made by BOP officials[,]" including "security classifications and facility designations"). Moreover, the plaintiff has no constitutionally protected interest in his security level, custody classification, or in his designation to a particular correctional facility or type of correctional facility. *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Perez v. Lappin*, 672 F. Supp. 2d 35, 42 (D.D.C. 2009) (citing cases).

## III. CONCLUSION

Although the plaintiff exhausted his administrative remedies with respect to his challenges to the CIM assignment, he has not exhausted his administrative remedies prior to filing this lawsuit with respect to Program Statement 1330.18. The plaintiff's completion of the administrative grievance process regarding the CIM assignment does not mean that the Court may review this determination, however, because he is not entitled to relief under 42 U.S.C. § 1983, *Bivens*, the Privacy Act or the Administrative Procedure Act. The Court therefore grants the defendant's motion and dismisses this action. An Order is issued separately.


DATE:  March 12, 2015                    /s/ *Beryl A. Howell*
                                         BERYL A. HOWELL
                                         United States District Judge